RECEIVED
IN LAKE CHARLES, LA.

DEC -3 2012

TONY R. MOORE, CLERK
BY_____
                    DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JENNIFER JAYE FROST** | : | **DOCKET NO. 2:12-CV-1985** |
| **VS.** | : | **JUDGE MINALDI** |
| **J.P. YOUNG, WARDEN, et al** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is a Motion to Dismiss Pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(6), filed by the defendants [Doc. 23].[1]  The motion is opposed by the plaintiff, Jennifer Jaye Frost [Doc. 40].  The defendants timely filed a reply [Doc. 36].  Related to this motion, also before the court, is the plaintiff's Motion for Allowance of Limited Discovery [Doc. 37], which is opposed by the defendants [Doc. 39].  For the foregoing reasons, the defendants' Motion to Dismiss is GRANTED and the plaintiff's Motion for Allowance of Limited Discovery is DENIED.

### BACKGROUND

The plaintiff, Jennifer Jaye Frost, surviving sibling of the decedent Robert Hataway (a federal inmate who died on December 3, 2010 while incarcerated at the Federal Medical Center at Butner, North Carolina), filed this action "pursuant to the Civil Rights Act of 1871, as

---

[1] As the above-captioned case was previously in the Eastern District of North Carolina, the defendants also originally moved, in their Motion to Dismiss or Transfer, to transfer venue to this court pursuant to Rule 12(b)(3) and 28 U.S.C. § 1404(a).  The Eastern District of North Carolina granted the defendants' motion for the limited purpose of transferring the case to the Western District of Louisiana [Doc. 40], but reserved resolution of all other claims against the defendants for this court following transfer.

amended, 28 U.S.C. § 1331 and 1343, 42 U.S.C. § 1983 and 1988, under the Federal Tort Claims Act, under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*., and under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution."[2]  Ms. Frost also asserts "pendent state claims" of intentional and negligent infliction of emotional distress, wrongful death, and survival.[3]

Ms. Frost claims that while her brother, Mr. Hataway, was incarcerated at the Federal Correctional Center in Oakdale, Louisiana, he "manifested a small lump in his right arm pit" which "went untreated and continued to grow and expand and was readily discernable to anyone seeing [Hataway,] and posed an obvious and serious burgeoning threat to his health."[4]  Oakdale prison medical staff eventually diagnosed him with "metastatic melanoma and/or related forms of cancer" and transferred him to the Federal Medical Center in Butner, North Carolina, where he died several weeks later.[5]  Ms. Frost asserts in her complaint that "[o]ne or more members of the medical staff at Oakdale were explicitly aware of [Hataway's] condition and of the need and requirement for prompt treatment but the same was not performed or pursued until such time as the growth had predictably and inevitably metastasized and spread to include and compromise his lymph nodes."[6]  The plaintiff further asserts that if the unnamed Oakdale prison medical staff had performed "timely . . . appropriate and customary evaluations, tests, diagnosis, and treatment," Hataway's "cancer could have been monitored and controlled and [Hataway] could

---

[2]Pl.'s Compl., [Doc. 1], at ¶ 1.

[3]*Id.*

[4]*Id.* at ¶¶ 20, 26.

[5]*Id.* at ¶ 14.

[6]*Id.* at ¶ 47.

have been treated and cured and continued to live."[7] Ms. Frost names as defendants J.P. Young,

the warden of Oakdale; Arthur Beeler, the retired warden of FMC-Butner; the Federal Bureau of

Prisons ("BOP"); unnamed "agents, servants and employees of the BOP at Oakdale. . . and at

FMC Butner," and "[c]ertain other persons acting for and on behalf of the BOP and believed to

have been employed by the BOP."[8]

The defendants then filed this motion, which included a request to transfer the case to this

judicial district pursuant to 28 U.S.C. § 1404(a).[9]  In considering this motion, the Eastern District

of North Carolina found that the "[d]efendants had offered compelling reasons which support

transferring this action to the Western District of Louisiana, where Oakdale is located."[10]  As a

result, this case was transferred on July 20, 2012 to this court.

The defendants' motion also includes a motion to dismiss claims against the defendant

Warden Young under Rule 12(b)(2), alleging that the Eastern District of North Carolina lacks

personal jurisdiction over him.[11]  The Eastern District of North Carolina did not address this

argument in making its decision to transfer the case,[12] and thus it remains, but the undersigned

notes that the transfer from North Carolina to this district effectively moots the defendants'

argument on this point.  As noted *supra*, Young is the current warden of Oakdale Prison, located

in this district.  The defendants' personal jurisdiction arguments, which the defendants wrote at a

time when this case was still in North Carolina, center around the fact that Young does not have

---

[7]*Id.* at ¶ 49.

[8]*Id.* at ¶¶ 7-10.

[9]Defs.' Mot. to Dismiss or Transfer, [Doc. 23], at pg. 1.

[10]Order on Defs.' Mot. to Dismiss or Transfer, [Doc. 40], pg. 3.

[11]Mem. in Supp. of Defs' Mot. to Dismiss or Transfer, [Doc. 24], at pg. 9.

[12]*See generally* [Doc. 40].

the requisite minimum contacts with *North Carolina*, and that "all of Warden Young's actions [instead] occurred in *Louisiana*."[13] Defendant Young's affidavit supports this contention: he asserts that he is the warden at Oakdale, and "worked at Oakdale at all times relevant to the plaintiff's complaint."[14]  As it appears from the motion that the defendants are asserting that personal jurisdiction would instead be proper in this district, where Warden Young interacted with the decedent, and their arguments center around North Carolina lacking personal jurisdiction, their 12(b)(2) motion is now moot.-

The defendants' remaining 12(b)(1) and 12(b)(6) arguments were not addressed in the Eastern District of North Carolina's ruling, and thus will be addressed in this order.  First, the defendants argue that the § 1983 claim against defendant Warden Beeler (which should actually be a *Bivens* claim, since this case deals with federal actors) should be dismissed because Ms. Frost fails to allege any personal conduct on Warden Beeler's part which contributed to Mr. Hataway's demise, instead making general allegations of liability.[15]  They also argue that, as per *Bivens*, there is no supervisory liability on Warden Beeler's part, and that Beeler was allowed to rely on the judgment of medical personnel who treated Mr. Hataway.[16]

Second, the defendants argue that the United States should be substituted in as the sole party defendant for all tort claims against Wardens Young and Beeler, as the Attorney General has certified, pursuant to the Westfall Act, that Young and Beeler were acting within the scope of

---

[13]*Id.* at pg. 8 (emphasis added).

[14]"Young Declaration," Ex. 1 to Mem. in Supp. of Defs.' Mot. to Dismiss or Transfer, [Doc. 24-1].

[15][Doc. 23] at pg. 10.

[16]*Id.* at pg. 14.  The defendants did not make the same argument for Warden Young, presumably because they moved to dismiss him for lack of personal jurisdiction.  The same arguments, however, would apply to Warden Young, as he was in a supervisory position at Oakdale while Mr. Hataway was incarcerated there.

their employment.[17]  Third, the defendants argue that all of Ms. Frost's tort claims should be dismissed for lack of subject matter jurisdiction because she has failed to exhaust administrative remedies.[18]  Fourth, the defendants argue that Ms. Frost's intentional infliction of emotional distress claim must be dismissed because there is no waiver of sovereign immunity for intentional torts.[19]  Fifth, the defendants argue that Ms. Frost's medical negligence claims must be dismissed because Ms. Frost has failed to comply with North Carolina's Rule 9(j) pre-certification requirements.[20]  Sixth, the defendants argue that the plaintiff's Americans with Disabilities Act claim should be dismissed because the ADA does not apply to the federal government or federal employees.[21]

In the plaintiff's response, she focuses on the fact that the parties have not yet conducted discovery, and thus she has not received copies of Mr. Hataway's medical records from Oakdale or FMC-Butner yet.[22]  She argues that it would be premature to grant a motion to dismiss without having this crucial information, because presently all she has access to are first-hand accounts on what happened from Mr. Hataway and other Oakdale prisoners.[23]  In her subsequent Motion for Expedited Discovery, she reasserts these claims, and notes that discovery is necessary in order to

---

[17]*Id.* at pg. 16-17. These tort claims include the plaintiff's FTCA claim, her medical malpractice claim, her negligent and intentional infliction of emotional distress claims, and her wrongful death and survival action claims

[18]*Id.* at pg. 18.  These claims include her FTCA claim, her failure to train and supervise claim, her medical malpractice claim, her intentional and negligent infliction of emotional distress claims, and her wrongful death and survival action claims (essentially, every claim except for her § 1983 claim and her Americans with Disabilities Act claim).

[19]*Id.* at pg. 19.

[20]*Id.* at pg. 22.

[21]*Id.* at pg. 24.

[22]Pl.'s Resp. In Opp. to Defs.' Mot. to Dismiss or Transfer, [Doc. 32], at pg. 2.

[23]*Id.*

reveal the identities of the unnamed "John Doe" prison medical staff employees currently in her complaint.[24]

She also argues that, construing all facts in her complaint to be true, the defendants' actions rise to the level of intentional denial of reasonable care.[25]  As such, she argues that this deliberate indifference to Mr. Hataway's condition is actionable.[26]  Finally, she alleges that individual liability exists for failure to provide medical care and reasserts that specific defendants who are individually liable cannot be named until the defendants provide medical records through discovery.[27]

In the defendants' reply, they first argue that the plaintiff has made no argument showing that Warden Beeler had any personal liability for Mr. Hataway's death.[28]  They attack the plaintiff's contention that she cannot proceed in this litigation until the parties conduct discovery and she receives medical records, alleging that Ms. Frost has never even tried to obtain these medical records, and indeed she could easily obtain them from a Freedom of Information Act request.[29]  Further, they note that the evidence she does have (letters from Mr. Hataway's co-inmates at Oakdale) indicate that there are specific individuals at Oakdale who could be named in her complaint.  Yet, Ms. Frost has failed to add these individual defendants to her complaint or

---

[24]Pl.'s Mot. for Allowance of Expedited Disc., [Doc. 37].

[25][Doc. 32] at pg. 3.

[26]*Id.*

[27]*Id.* at pg. 5.

[28]Def.'s Reply to Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss, [Doc. 36], at pg. 1.

[29]*Id.* at pgs. 2-3.  The defendants reasserted this argument in their response to Ms. Frost's motion for expedited discovery.

allege with specificity how they intentionally mistreated Mr. Hataway.[30]  Further, the defendants

argue that the plaintiff has provided no reason for why she never exhausted administrative

remedies on her tort claims or complied with North Carolina's pre-filing certification

requirements for her medical malpractice claim before filing her complaint.[31]

## LEGAL STANDARDS

### I.    MOTION TO DISMISS UNDER RULE 12(B)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure challenges the subject matter jurisdiction of the court.  FED. R. CIV. P. 12(b)(1).  The

court may dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1)

the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record;

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed

facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  "The burden of proof for a Rule

12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281

F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D.

Tex. 1995)).

On a Rule 12(b)(1) motion, the court is empowered to consider matters of fact which may

be in dispute. *Id.* (citing *Williamson*, 645 F.2d at 413).  "Ultimately, a motion to dismiss for lack

of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot

prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.

1998)).

---

[30]*Id.* at pg. 3.  These potential individual defendants include a physician's assistant (PA Frias), physicians (including a Dr. Freeborn), and other untitled individuals at Oakdale.

[31]*Id.* at pgs. 4-5.

## II.    MOTION TO DISMISS UNDER RULE 12(B)(6)

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6).  When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp.2d 383, 388 (E.D. La. 2006).

To avoid dismissal under a Rule 12(b)(6) motion, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.  Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

## III.    MOTION FOR EXPEDITED DISCOVERY TO DISCOVER JOHN DOE DEFENDANTS

In general, the use of "John Doe" defendants to identify as yet unknown parties is not preferred by the courts. *See Wiltsie v. California Department of Corrections*, 406 F.2d 515, 518 (9th Cir.1968). However, situations arise, such as the present, where the identity of alleged defendants is not known prior to the filing of a complaint.  In such circumstances, courts typically grant the plaintiff an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir.1978), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *see Wells Fargo & Co. v. Wells Fargo*

*Express Co.*, 556 F.2d 406, 430-431 n.24 (9th Cir.1977); *also, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13, 98 S.Ct. 2380, 2390 n.13, 57 L.Ed.2d 253 (1978).

While the Fifth Circuit has not expressed a standard on what a plaintiff must show in order to be granted limited discovery, courts out of the Ninth Circuit have synthesized such a standard:

> For leave to conduct discovery to identify a Doe defendant, the moving party must: (1) identify the defendant with enough specificity to allow the Court to determine whether the defendant is a real person or entity who could be sued in federal court; (2) recount the steps taken to locate the defendant; (3) show that its action could survive a motion to dismiss; and (4) file a request for discovery with the Court identifying the persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information.

*Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D.Cal.1999).

## LEGAL ANALYSIS

### I.     Section 1983 and 1988 Civil Rights Claims

#### A.     Warden Beeler and Warden Young Cannot be Liable for Mr. Hataway's Injuries Simply because of their General Supervisory Roles

Ms. Frost claims relief from the defendant, Warden Beeler, a former warden at FMC-Butner, for violations of §§ 1983 and 1988.  The defendants argue that, as Ms. Frost has only alleged general supervisory liability on the part of Warden Beeler, her claims are not actionable. As a preliminary matter, the undersigned notes that because this case involves federal actors, Ms. Frost should proceed under *Bivens* instead of § 1983.  *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999 (1971).  Construing her complaint in the light most favorable to the plaintiff, however, the undersigned will assume that Ms. Frost instead intended to assert *Bivens* claims.

9

In order to successfully plead a cause of action under *Bivens* or under § 1983, a plaintiff must ordinarily articulate a set of facts which illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986). A supervisor may be held liable only if: (1) the supervisor is personally involved in the constitutional deprivation, or (2) there exists a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303–304 (5th Cir.1987).[32]

Looking to the complaint and construing it in the light most favorable to the plaintiff, neither condition is satisfied in this case as far as the claims against Warden Beeler. Ms. Frost describes Warden Beeler's involvement in this case by noting that he "supervis[ed], retain[ed], engaged[ed], train[ed] and disciplin[ed] all subordinate correction officers and staff at FMC Butner with respect to their care, custody and control of inmates."[33] Supervisory officials are not liable for subordinates' actions on any vicarious liability theory, as the doctrine of *respondeat superior* does not apply in prisoner civil rights actions. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, (1978). Thus, the plaintiff's civil rights claim against Warden Beeler must be dismissed.

While the defendants did not address this argument in their motion, the undersigned notes that the same holds true for Warden Young, the warden at Oakdale while Mr. Hataway was incarcerated. Ms. Frost also alleges that he is named in this action because he "supervis[ed], retain[ed], engaged[ed], train[ed] and disciplin[ed] all subordinate correction officers and staff at

---

[32]The undersigned notes that while *Thompkins* was a § 1983 case, the Fifth Circuit does not distinguish between *Bivens* and § 1983 claims, and thus the standard on supervisor liability still applies. *See Izen v. Catalina*, 389 F.3d 363, 367 n. 3 (5th Cir. 2005).

[33][Doc. 1] at ¶ 9.

Oakdale. . ."[34] Thus, for the reasons discussed *supra*, the plaintiff's civil rights claim against Warden Young must similarly be dismissed.

### B.     The Plaintiff's Claims against the Other Unnamed Defendants Cannot Succeed under *Bivens*, and thus Expedited Discovery is not Permissible

Ms. Frost also asserts her § 1983/*Bivens* claims against several unnamed prison employee defendants. She argues, in her response to the defendants' motion to dismiss and also in her motion for expedited discovery, that she needs discovery to go forward so that she can obtain medical records, in order to ascertain exactly which defendants allegedly mistreated Mr. Hataway while he was seeking medical care.[35] Her allegations against these defendants center around the fact that they did not diagnose Mr. Hataway's cancer quickly enough, and thus the cancer went untreated and grew for several months before being discovered and treated at FMC-Butner.[36]

Ms. Frost is correct in arguing that she can establish an actionable constitutional violation if she alleges facts tending to show that the defendants were deliberately indifferent to Mr. Hataway's serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). The standard for what constitutes deliberate indifference is high, however: "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk or serious harm." *Id.* In order to establish an actionable cause of action, she must show: (1) prison officials were aware of facts from which an inference of substantial risk could be drawn, (2) officials actually drew that inference, and (3) the response by officials indicates that they subjectively intended that harm to occur. *Id.* at 458-59.

---

[34] *Id.* at ¶ 8.

[35] *See generally* [Doc. 37].

[36] [Doc. 1] at ¶¶ 25-27.

The appropriate test balances the needs of the prisoner against the needs of the penal institution, and as such, the critical focus looks to medical necessity, not desirability. *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981). A plaintiff's disagreement with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. *See e.g. Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992). An allegation that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992).

Here, Ms. Frost argues in her response that it is clear that the conduct of certain as yet unnamed prison employees amounts to actionable deliberate indifference, and supports this by repeating the factual allegations in her complaint and providing letters from Oakdale prison inmates who allegedly had knowledge of the level of treatment Mr. Hataway received.[37] She also makes the bare assertion in her complaint that she has not been able to obtain records from the defendants.[38] The undersigned notes that Ms. Frost has not responded to the defendants' allegations that she has never actually tried to obtain prison medical records though a Freedom of

---

[37]*See generally* [Doc. 35-1], Exhibit Letters from Oakdale Inmates. These letters include letters from Oakdale inmate Kenneth McBryde, who alleges that when Mr. Hataway tried to seek treatment from "P.A. Frias" in fall of 2009 for a lump under his arm, Frias dismissed his concerns, saying the lump was "an infected sweat gland." McBryde alleges that Mr. Hataway tried to see medical staff again in 2010, but was similarly dismissed. After complaining to a prison doctor, Dr. Freeborn, that the growth under his arm had grown to the size of a softball, McBryde notes that Dr. Freeborn scheduled a surgery in "May or June" of 2010, and subsequently discovered that the lump was indeed cancer  McBryde notes that medical staff "drug [sic] their feet in regards to getting [Mr. Hataway] treatment after his initial diagnosis," but also notes that he does not know whether Hataway's "cancer could have been beaten if caught early enough." Other letters from Oakdale inmates echo McBryde's accusations that P.A. Frias was remiss in not identifying the lump as cancer sooner, but that Dr. Freeborn quickly shipped Mr. Hataway off for surgery once he was alerted to Mr. Hataway's condition.

[38][Doc. 1] at ¶ 16.

12

Information Act request.  Nor, puzzlingly, has Ms. Frost moved to add the individuals (most notably, the "PA Frias" mentioned in Oakdale inmates' letters, who allegedly disregarded Mr. Hataway's initial complaints) as defendants in her complaint after receiving these letters from Mr. Hataway's co-inmates.

The undersigned finds that, based on the information provided, Ms. Frost should not be granted leave to conduct expedited discovery, because, as per the standard for granting expedited discovery, her action against the John Doe defendants cannot survive a motion to dismiss.  The plaintiff's claims amount to nothing more than general allegations about what would have happened if Mr. Hataway had been diagnosed with cancer earlier, and thus do not rise to the level of deliberate indifference which is required to sustain an actionable *Bivens* claim.  As noted *supra*, allegations of negligence or even gross negligence, whether in diagnosing a prisoner or otherwise, are insufficient to establish an actionable *Bivens* claim of deliberate indifference.  Her tort actions and ADA claim similarly would not survive a motion to dismiss, because she has not exhausted her administrative remedies on her tort claims, and the ADA does not allow actions against federal agencies or employees, and thus expedited discovery is not permissible to flesh out these claims either.[39]

Further, an affidavit from Dr. Carlos Duchesne, Clinical Director at FMC-Butner (attached as an exhibit to the defendants' motion), details the steps taken in response to Mr. Hataway's health concerns.[40]  Duschesne notes that while an October 2009 physical exam of Mr. Hataway found that "no abnormalities were noted," in May 2010, after another physical exam,

---

[39]These issues are discussed in greater detail in Sections II and III of this memorandum.

[40]Decl. from Carlos Duchesne, [Doc. 25].

Mr. Hataway was referred to a general surgeon to evaluate the growing mass under his armpit.[41]

Once the presence of cancer was confirmed, he was transferred to FMC-Butner, "the BOP

medical center which specializes in treating cancer."[42]  He was treated by an oncologist at FMC-

Butner for a few weeks before succumbing to cancer.[43]  Thus, prison officials did indeed respond

to his illness.  The fact that Mr. Hataway eventually died of cancer while in prison does not, in

and of itself, create an actionable *Bivens* claim of deliberate indifference, and thus the plaintiff's

*Bivens* claims against the John Doe defendants must be dismissed.

**II.    Ms. Frost has Failed to Exhaust Administrative Remedies for her Tort Claims
against the United States, and thus This Court Lacks Subject Matter Jurisdiction**

The defendants next argue that the United States should replace the individual defendants

as the sole defendant for all FTCA claims because, pursuant to the requirements of the Westfall

Act, the Attorney General (through a United States Attorney) has certified that the individual

defendants were acting in the scope of their employment during all times mentioned in Ms.

Frost's complaint.[44]  As such, they allege that all of Ms. Frost's tort claims should be dismissed

for lack of subject matter jurisdiction because she has failed to exhaust administrative remedies

against the United States.[45]  In support, they attach declarations from Teresa Todd, a Legal

Assistant for the BOP, and Michael Bredenberg, a Staff Attorney for BOP.[46]  In both

declarations, the two declarants note that through their searches of Oakdale and FMC-Butner

---

[41] *Id.* at ¶¶ 7-10.

[42] *Id.* at ¶¶ 13-14.

[43] *Id.* at ¶ 21.

[44] [Doc. 24] at pg. 16; *see also* Ex. 3 to Defs.' Mot. to Dismiss, Certification of Scope of Employment.

[45] [Doc. 24] at pg. 18.

[46] *See* Decl. of Michael Bredenberg, [Doc. 26], and Decl. of Teresa Todd, [Doc. 24-2].

14

records, they have not been able to locate records or documentation indicating any administrative

tort claims filed with the BOP concerning any allegations in Ms. Frost's complaint, either by Mr.

Hataway or Ms. Frost.[47]   Ms. Frost does not address this issue in her response, nor has she filed

any affidavits to contest Todd or Bredenberg's declarations.

      As a preliminary matter, the undersigned agrees that the United States should be

substituted as the sole defendant for all FTCA claims. *See* 28 U.S.C. § 2679(d)(1).  *Guiterrez de*

*Martinez v. Lamagno,* 515 U.S. 417, 115 S. Ct. 2227 (1995), properly sets forth the standard for

when the United States may replace individual federal employees in a FTCA cause of action:

> When a federal employee is sued for a wrongful or negligent act, the Federal
> Employees Liability Reform and Tort Compensation Act of 1988 (commonly known
> as the Westfall Act) empowers the Attorney General to certify that the employee 'was
> acting within the scope of his office or employment at the time of the incident out of
> which the claim arose....' 28 U.S.C. § 2679(d)(1). Upon certification, the employee
> is dismissed from the action and the United States is substituted as defendant.

*Id.* at 420. Here, as the Attorney General has filed such a certification, substitution is proper.

      Further, subject matter jurisdiction of this court is conditioned on compliance with 28

U.S.C. § 2675(a), under which "an action shall not be instituted" against the United States for

any act of a government employee unless and until a claimant first presents a claim to the agency

and receives a final denial by that agency.  Exhaustion of the administrative remedy found in 28

U.S.C. § 2675(a) is a jurisdictional prerequisite to suit, even for incarcerated prisoners. *See*

*McNeil v. U.S.,* 508 U.S. 106, 113 S. Ct. 1980 (1993).

      As noted *supra*, the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party

asserting jurisdiction, and here, Ms. Frost does not carry that burden. She provides no reason why

---

[47]*Id.* These include administrative claims under the FTCA, as well as searches for claims relating to medical malpractice, failure to train or supervise, intentional and negligent infliction of emotional distress, and wrongful search/survival.

she did not file any administrative tort claims before instituting this action in court, nor does she even make the bare allegation that administrative remedies were exhausted. As such, this court lacks subject matter jurisdiction on all of her tort claims, including her FTCA claim, her failure to train and supervise claim, her medical malpractice claim, her intentional and negligent infliction of emotional distress claims, and her wrongful death and survival action claims, and these claims will be dismissed.[48]

### III.   The Americas with Disabilities Act does not Apply to Federal Actors, and Thus the Plaintiff's ADA Claim Must be Dismissed

Finally, the undersigned addresses the issue of whether the plaintiff's claims against the defendants are actionable under the Americans with Disabilities Act. The clear language of the ADA establishes that the ADA "does not apply to the federal government, its agencies or employees." 42 U.S.C. § 12111(5)(B)(i). Thus, as her claim is against the BOP and federal employees, this court must dismiss Ms. Frost's ADA claim.

### CONCLUSION

For the reasons stated herein, the defendant's Motion to Dismiss will be granted, and the plaintiff's Motion for Expedited Discovery will be denied.

Lake Charles, Louisiana, this 12 day of _____ 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[48] As the court lacks subject matter jurisdiction over these claims, the undersigned will not address the additional arguments set forth by the defendants on why these tort claims must be dismissed (failure to satisfy pre-certification requirements for her medical malpractice claim and sovereign immunity for intentional infliction of emotional distress).